May it please the court. I'm Jerry Lids, appearing for the City of Eugene and three of its employees. I would like to reserve three minutes for rebuttal, please. This is a First Amendment case in which a police officer claimed that his superiors transferred him to another unit within the police department in retaliation for speech. On appeal, there are a number of issues, but the central, the core issue, is was his speech actually protected by the First Amendment? I'll also talk briefly about qualified immunity and the sufficiency of evidence to support punitive damages. As you know, this court uses a five-part test derived from your decision in Ng v. Cooley to decide whether or not speech is protected. I want to focus on the first two parts of that test. The first question is, did plaintiffs speak about a matter of public concern? That's a pure question of law. In the abstract, obviously, public safety is a matter of public concern. Nobody disputes that. But the cases require a somewhat closer look at what was going on with that speech. The cases require that you look at the form, the content, and the context of the speech in light of the whole record. As this court said in the Desrochers case, you look to the point. What's the point of the speech? Here, the form of the speech was oral complaints and e-mails to his supervisors and his union representative. There is no evidence that a plaintiff communicated any of his concerns to anybody outside of the police department. So whose burden is it to show the nature of the communication, whether it, in fact, meets, whether it is a public concern for purposes of First Amendment analysis? I'm sorry, Your Honor, I missed the first part of the question. Is it plaintiff's burden? In other words, is it the plaintiff's burden to show that it fits into that category? Yes, it is. And why is this a pure matter of law? I'm  burden to show that it fits into that category? Yes, it is. And why is this a pure matter of law? Well, the cases say it is, very consistently, from Connick through Eng and Desrochers. Well, I guess I'm wondering whether or not there you say it's a matter of law because there's no evidence that it was ever a matter of public concern. I'm wondering why you think he was speaking not as a private citizen. Yes, Your Honor. Because I take it for it to get, to get, to have a First Amendment claim, you must establish that he was speaking as a private citizen here. He must establish both that he was speaking as a private citizen and that it was a matter of public concern. So focus on the private citizen part of it. Focus on the private citizen part of it for a moment. He needs to demonstrate that he spoke as a private citizen. And I think the point of this prong of the First Amendment analysis is that just because you are a public employee does not mean you lose your personal right, your private right to speak as a citizen on a matter of public concern. The classic example is the letter to the editor about, you know, whatever it may be. A city employee testifies at a legislative hearing or before city council, criticizes the mayor. Those are clearly in your private capacity. Right. So where do we draw the line in a case like this where we have a public employee, the speech is about matters that touch on the department that he serves in. Is everything that touches on that department spoken as an employee? Where do we, or where do we draw the line? Is he ever a private citizen when speaking about public safety? I think you draw the line at, viewed in context, whose issues is he talking about? And in this case, essentially what Plaintiff said is there are dangerous practices occurring in the SWAT team, and I don't want to work with them anymore. And I don't think you can divorce the first part of that statement from the second part. But didn't the dangerous practices that he was complaining about also affect the public, who could have been injured by stray bullets fired by SWAT teams who didn't know how to use their guns? Absolutely, Your Honor. So why then isn't this not a matter of public concern? It's not. Well, let me go back then to the public concern issue. It initially was a public concern, but you in his brief that everybody in the department knew of those issues, the danger issues in the SWAT team. In fact, a number of things, additional training and so on, went on to improve the SWAT team. Eventually they shut it down, changed its operating procedures. He says, and this is part of his argument that he spoke as a private citizen, he already knew. So again, come back to that. Where is the dividing line between his statements as a private citizen and his statements as a public employee? Is it a duty to report that makes these statements as a public employee, or is it something else? Your Honor, I believe it is a little more than just a strict duty to report, and that is, and he puts a lot of eggs in that basket of the, I did not have a formal there was evidence that I did not have a formal duty to report. That was contested, but we'll presume under the jury's findings that in the formals, if he had a formal duty to report informally, that in the department, often people didn't and that was tolerated. But I think it is more than just did you have a duty to file a report. The question is, were you talking about issues that related to the operation of your department and with a unit that you're assigned to work with? How does Garcetti affect our analysis in this case? I'm sorry, Your Honor. How does Garcetti affect our analysis in this case? I think Garcetti certainly cuts in favor of the city's position. Again, in that case, the work was done pursuant to his employment. It clearly was more directly one of his formal assignments. But this is not, in this case, it's not as though, to contrast one of the cases that plaintiff relies on, it's not as though plaintiff in this case said the accounting department in the police department accounting unit is making errors or oversight. He's talking about the performance of a unit that he worked with and he was complaining to his supervisor about the operation of those two units together. I guess I'm puzzled, counsel. I'm trying to get you to use the case that seems to be helpful to the city. You're not doing it. I'm sorry? As I understand it, Hagan conceded in his deposition, and I quote, that the police department, in quotes, wanted him to report safety concerns, at least in very general terms. So how does that factor into the teaching that we get from the Supreme Court on Garcetti? It tells us that this was part of his job responsibility to do this. And if that's correct, and we, of course, have to look at the facts on that, but if that's correct, doesn't that exculpate the city? Yes, it does. Now, how do we deal with, admittedly, this is later, but how do we deal with Dahlia? Does Dahlia play any role in our analysis here? I don't believe so, Your Honor. In Dahlia, the key part in Dahlia was that you overruled the Huppert v. City of Pittsburgh decision in which the court had recognized a kind of formal job description, and in Dahlia, you said, it's a more practical inquiry than that, just because there's a piece of paper somewhere in city government. Well, that gets back, then, does it not, to what Judge Hurwitz asked me before, is this isn't just a matter of law. Indeed, this is very fact-specific. And we have to, as we apply Garcetti and later Dahlia, look at the facts. Those are what drive the whole analysis here, right? They are, Your Honor. And there was a jury finding here, was there not? There was a jury finding, however, two parts of this. One is I'm not arguing about facts that were contested. I'm arguing about facts that he acknowledged and from his own testimony. So your position is that the issue of whether or not he acted as a public citizen or a public employee or a private citizen should have been resolved as a matter of law and shouldn't have gone to the jury? Yes, it should have, after the evidence was received. It is a mixed question of law and fact. And as we all know, mixed questions of law and fact are difficult to review. But I think this one should have been, this question should have been taken from the jury after all the evidence was received. If it appropriately went to the jury, don't we have to defer to their findings? If we disagree with you that it's not a question of law, then aren't we required to defer to the jury's findings on this issue? To the extent there is a jury finding under the instructions that were given, yes, Your Honor. And wasn't a jury instructed that it had to resolve this private-public issue? Yes, although I think in terms of the jury instructions. And I can't quote them either. But you're not objecting here to the jury instructions. You're saying that the issue shouldn't have gone to the jury at all. I'm saying on the undisputed facts, he was acting within the sphere of his public responsibilities. And the test that Plaintiff would like you to use is a very narrow, did he have a duty to report. And I'm still struggling a little bit. I'm sorry. I didn't mean to interrupt you. I'm still struggling a little bit with the test that you would have us apply. So could you give us a one-sentence summary of the test you'd have us apply? On public versus private? Sure. The test is that an employee speaks in his public capacity if it is part of fulfilling job responsibilities. You're at your three minutes. It's up to you whether you want to continue right now. But if you want to save rebuttal time, at least I, for one, would really like you to address the issue of qualified immunity when you come back up. Your Honor, I will speak. I want to just follow up with one other point, and that's to go back just a moment for public concern. That is a pure question of law. The qualified immunity argument in this case essentially derives from our argument on the merits. And the question is whether even if defendants were mistaken, they could reasonably have believed that reassigning an employee who repeatedly said, I can't work with my supervisor, whether that would be consistent with his First Amendment rights. This Court has recognized that there is no precise definition of public concern. In the DeRochet case said, you know, we acknowledge we've had some difficulty with this issue. Our underlying concern here is nobody disagrees that the canine unit was dysfunctional. This is not like a First Amendment case where plaintiff goes to testify at a legislative hearing or writes a letter to the newspaper, and the proper response from his employer is no response. He can do nothing. I have trouble understanding that argument. So if everybody in the department knew the chief was corrupt, then somebody speaking about it wouldn't be a matter of public concern, because whoever you reported it to would say, we already know. The already know part doesn't – I don't find that taking it out of a matter of public concern. Your Honor, I think my point is he was, although in the abstract public safety is a concern, in this case his complaint was about his assignment and his supervisor. And that was a situation that nobody thought could last. So management is faced with a choice of do I remove the supervisor or do I reassign Mr. Hagan. I think they could reasonably believe that this was basically a personnel dispute,  Okay. So you've got a little bit of time. Counsel. If this case was just about the supervisor and a dysfunctional K-19, we wouldn't be here. It would have been a judgment in favor of the defense early on. In fact, this case is about highly trained weapons experts and shooting experts out there in the streets of Eugene accidentally shooting their own people, accidentally having their guns go off from practices that the plaintiff described as being like a cowboy. That's a public concern. Now, it's true that these issues were only raised in the department. Did he have a duty to report that they were acting like cowboys and endangering him and the public? Absolutely not, Your Honor. So if he saw these things on the street and the public was being endangered and he had the ability to protect the public by reporting it to his superiors, he was entitled to stick it in his pocket and go home and not say a word? Absolutely not, Your Honor. But going with what the city said, this was well-known information. This wasn't something that suddenly the plaintiff enlightened the Eugene Police Department that these things were happening. These accidental discharges and negligent discharges started around 2002 when a sergeant was shot. The department was well aware of a 2005 accidental discharge in which a weapon went off and the SWAT officers were laughing about it. That was around the department. Then in 2008, Officer Matt Lowen was shot by a SWAT member when they were out on call. That was well-known in the department. Well, let me ask you this. As you well know from both Dahlia and Garcetti, the fact that these things are repeated doesn't convert them into a private speech. How do you deal with Garcetti? Well, Your Honor, Garcetti was a, as you know, was a supervisor. He was a calendar attorney who was concerned about some of the cases he was dealing with, that there may have been corrupt practices, and he was learning from defense counsel. He was truly reporting that to the superiors, truly bringing that information to them, and it was part of his job as a calendar deputy. Hagan had no authority over the SWAT team. He had no authority over the SWAT team. So you think the argument from Garcetti that distinguishes this is the question of whether the person is a supervisor and has authority over other people. Is that what your lesson is? No, Your Honor. Not that specific, but I do recall in the Garcetti language about being on guard against overbroad policies that employers may put out about duties, and that's what we have here. We have this duty to report safety concerns. Theoretically, every member of that department would have had to come to the chief and said, you know, chief, I'm concerned about these cowboy practices of SWAT, that I'm going to get shot out there. That's beyond common sense, but that's basically what the city decided. But wasn't your client in part complaining about the lack of training for the SWAT team? He was. And why isn't that a classic sort of internal matter? I work with these guys. They're not, you know, I should let you know for the safety of my group and other groups that the SWAT team is not properly trained. Why isn't that exactly the kind of internal speech that makes it not a matter of private concern? Well, Judge Hurwitz, absolutely that piece, that little piece of his speech is more of a personal concern. Is it a personal? No, I'm asking is it not a personal concern, but isn't that a departmental concern? I work with a bunch of other, you know, it may not be me. Maybe somebody else on the street of the police, and they're in danger from the SWAT team's activities. Why isn't that classically what you expect somebody to talk about inside the department, whether or not there's a duty, in order to improve the activities of the department? Well, I think, first of all, you would expect that, as you just observed, whether or not there's a duty. In fact, when the city stated in their reply brief that Hagan admitted he had a duty to report, he actually said he had a moral duty. But put aside moral, legal, or any duty. Duty is not a sine qua non for this, is it? Do you have to have a duty to report for this to be a – for him to be acting as a public citizen, if you're a public employee? Well, you don't – I understood Garcetti and the free tag in some of the cases in this circuit to draw the line at whether it was part of somebody's job duties. So when I asked the other side where they would draw the line, you would draw the line at whether or not it's a required duty of your job to report this? Essentially, yes. It's part of your job. And what case do you rely on for drawing that line? I'm looking at free tag. I'm looking at the – this Court's language in distinguishing Marable v. Nitchman from free tag, where with Marable, the Court observed that Mr. Marable did not have any kind of duty to report the corruption by his supervisors, whereas in free tag, free tag was dealing with inmates. She was a corrections employee. The inmates were being lewd and sexual, and it was part of her job to report those incidents. Well, I'm looking at the jury findings here, and some of the things that the jury concluded seem to be pure legal issues. For example, did plaintiff prove by preponderance of the evidence that defendant Pete Kearns deprived plaintiff of his First Amendment right of free speech under the United States Constitution?  Are we bound? And if so, in what way are we bound by the jury's finding on that one issue? There are lots of them here, but very similar in nature. Well, it's true that that's a legal standard, although I think the jury had to look at the facts presented. What did Chief Kearns do? What did Chief Kearns do when he had this investigation from Lieutenant Bills saying that Hagan was the only member of the canine team that had a problem working in that unit? What did Chief Kearns do? So there were actual predicates to reach that legal conclusion. Okay. Help me with this. Let's just say, arguendo, that my interpretation of Garcetti and the presentation that was made to the jury is entirely different. Just arguendo. I'm not saying it is. If it was. And the jury made the finding that I just mentioned. There are many others, of course, but they all have a similar construction, referring to a First Amendment right under the Constitution. What deference do I owe to that jury finding, if any? Well, I think under AD v. California Highway Patrol, if the jury is making that call based on the facts of the case, they're properly instructed. I think there's extreme deference to be given. Okay. Even if it's based entirely upon the jury's understanding of the United States Constitution and the First Amendment? Well, that's as instructed by the court, which the court, as you know, went through the elements describing what makes that violation up. So you think the jury necessarily found that he was acting as a private citizen? Yes. Tell me what part of the jury instructions. Well, the court instructed the jury that, well, the court instructed the jury that Hagan was acting as a public employee, not a private citizen. He didn't have First Amendment protection. The jury was also instructed that, according to the city, he was not acting as a private citizen. There wasn't any more specific instructions on that. So it's by implication, then. So their eventual conclusion that the First Amendment was violated, in your view, necessarily carries with it an implied finding that he was acting as a private citizen? Yes. And based on the facts of the case, which the city argued, went through the rules, called up their human resources people to talk about the duty to report these situations. So the jury heard the evidence. The city's view that this made him a – within his duties as a public employee. And the city argued that in closing argument. And the jury found against the city. So I think with the arguments by the city and the jury instructions, I think that's it. What would your view be about the city's contention that it's entitled to qualified immunity and, indeed, all the officers are entitled to qualified immunity? Well, first of all, I think with A.D. versus Highway Patrol, I think that takes away the qualified immunity argument. Why? Because usually the qualified immunity argument is raised at the summary judgment stage with the jury being instructed that the city – the city thought that this was a speech by a public employee. And that was a defense. And the jury finding against that. Well, that's an entirely different issue. I mean, we're really talking about Saussure versus Katz and the Pearson case. It's a matter of constitutional law, whether the constitutional right was so well established that the reasonable officer would have known that what was done here was unconstitutional, unlawful. Well, I think the courts Johnson versus Multnomah County from the 1990s, this court's decision in Marable versus Mitchman, those draw lines from Garcetti. They distinguish the Garcetti situation. The city's relying on Garcetti, but that is a stretch. Okay. I guess, like your counterpart, what we have here is a failure to communicate, as they say in a certain movie. And I'm asking you to tell me why the city and these officers would not be entitled to qualified immunity. You're citing cases that go to the issue of, you know, private concerns and public concerns and the like. And what I'm saying is, what law, what cases existed at the time that this occurred that would make it clear to the reasonable officer that what they did was unlawful and unconstitutional? Well, Johnson versus Multnomah County and Marable versus Mitchman, I think, the constitutional rights and that the public employer cannot quash those constitutional rights. If that's true, if that's true, then what was the point of Garcetti? What was the point of Dahlia? Those showed a great deal of confusion about this area. Don't those two cases in and of themselves indicate that the area is quite muddled? And the very questions that the court has raised with you and your counterpart show that we're trying to understand how to parse this out. How do we analyze it? And if three United States Circuit judges are struggling with this, how much more so would the police struggle with it? Well, first of all, the area may be muddled, but as far as people in supervisory positions whose job duties are involved, I think Garcetti is clear. But isn't the very fact that it's muddled, doesn't that cut against you on the qualified immunity issue? Only if we accept the predicate that was part of Hagan's job duties. If it's not part of his job duties, he has no reason to. But you're begging the question, aren't you? Well, I guess I think it's not muddled as far as if you're dealing with a line officer versus a sergeant, a lieutenant, and chief of the department. Your argument, I take it, is that it was clear at the time that one could not retaliate against somebody for engaging in private speech on a matter of public concern. That's my argument. And along with that, I think they're running to Garcetti with that argument, to counter that. So here's my question. The question Judge Smith, let me play with the question Judge Smith asked you a little bit. Whether it's a matter of public concern is a question of law. And I, you know, I don't think that's a close question in this case. But my question is, how could the people that you're suing know the line between whether or not he was acting as a public employee or a private citizen? Was that – should that have been clear to them? Should the employee – should the supervisors have said, oh, no, we can't do this because he's acting as a private citizen? Well, I think the line was clear when – because their common knowledge of the department. He wasn't – there was no duty. He wasn't telling them anything new. He was – this was a true gadfly kind of speech. The Constitution talks about that Pickering talks about. We have a teacher who's talking about issues with education. Here we have a police officer, just a line officer, talking about an extreme safety hazard, and the city retaliated against him for doing that, for the city to – the defendants, excuse me, to have any reasonable belief that he had a duty to repeatedly say, gee, it's dangerous out here with these weapons practices, and that he somehow had to come to the department and tell them that, but they already knew, is quite a stretch. This is a classic gadfly case. He was bringing up irritating information. They didn't want to hear it anymore. They wanted to handle it themselves. They had the secret SWAT team. They weren't telling the rest of the department what they were doing to correct these practices, so Hagen continued to say, what's going on? Are we safe out here? What are you folks doing? And they retaliated against him for that. They can't believe that's reasonable. Before you sit down, I've been looking through the jury instructions, and perhaps I can't find it. Was the jury instructed that it had to – that it had to resolve this public, private concern in order to find for Mr. Hagen's? I believe they were. I believe the second element. Both of you seem to believe they were, and I can't find the precise place where the judge said that to them, and maybe I don't have the complete instructions. I think in the supplemental excerpt that I filed with the briefs we just filed, October 23rd, it should be in those instructions. Thank you. I'll look in those. Thank you. Thank you very much, counsel. The city has less than a minute, but you've got that. Thank you, Your Honor. I think in context, what you see from Plaintiff's speech is that essentially he was complaining about his own situation and about his own safety when he was working with another unit. This is not like the Maribel case that Plaintiff relies on where the plaintiff was talking about another function inside the Washington Department of State Ferries. In this case, this is essentially an employee grievance that does, admittedly, touch on public safety, but his focus was on his particular issues. Thank you. Thank you very much. The case just argued is submitted. We thank both counsel for the presentation.
judges: Alarcon, Smith, Hurwitz